UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ALICE L. SANDERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:06-0587 |
| ) | Judge Campbell/Bryant |
| USDA RURAL HOUSING, et al., ) | |
| ) | |
| Defendants. ) | |

To: The Honorable Todd J. Campbell, Chief Judge

REPORT AND RECOMMENDATION

Pending before the Court is defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Docket Entry No. 38), to which plaintiff has responded (Docket Entry No. 47). For the reasons stated below, the undersigned RECOMMENDS that the defendant's motion to dismiss be GRANTED in part and DENIED in part.

**I. BACKGROUND**

Plaintiff, proceeding *pro se*, is a resident of Greenbriar, TN. In November 1983, plaintiff applied for a housing loan from the Farmers Home Administration, now known as Rural Housing Service ("RHS"). Although plaintiff's husband, James Sanders, was listed as a co-applicant, plaintiff initially was found to be ineligible for the loan because her husband was not a member of her household at that time, and her income alone was insufficient to qualify her for the loan. However, in January 1985, plaintiff was found eligible for the loan when she and her husband claimed that although they were separated at the time, they intended to live together after constructing a home with the help of the RHS loan.

In October 1985, plaintiff's loan application had not disbursed and was about to expire,

so plaintiff was required to renew her application. This renewed application also indicated that plaintiff and her husband continued to live at two different addresses, and as a result, plaintiff again was found ineligible for the loan. Plaintiff appealed the denial of the loan, and the hearing officer reversed the denial. Subsequently, a loan in the amount of $42,500 was approved in April 1986, and the plaintiff's house was built later that year. Nevertheless, plaintiff alleges that the delay in processing her loan application was motivated by both racial and marital discrimination and that she was harmed by this discrimination. Moreover, plaintiff claims that, subsequent to securing the loan, she was the victim of discriminatory substandard construction and maintenance, and that her complaints went unaddressed. In 1987, however, the county supervisor and a construction inspector visited plaintiff's home and declared that it met or exceeded occupancy requirements and construction specifications.

Due to various financial difficulties in February 1987, plaintiff asked the county supervisor if her monthly payments could be reduced. To that end, Plaintiff and the county discussed several incarnations of an Interest Credit Agreement ("ICA"), but plaintiff claimed discrimination in the ICA process because she believed the county supervisor took too long to complete the ICA. Foreclosure proceedings against plaintiff began at that time, and are ongoing. In response to these proceedings, the plaintiff filed a series of discrimination complaints against the county supervisor and construction company, first with the county supervisor and the district director, and subsequently with the U.S. Department of Agriculture ("USDA") and the Tennessee Human Rights Commission.[1] Although these complaints were filed between 1987

---

[1] Plaintiff previously had filed a racial discrimination complaint against the Department of Housing and Urban Development, alleging that the city refused to correct a drainage problem on her property because she is black.

2

and 1999, plaintiff alleges ongoing injury to this day, as a result of discrimination in the ICA and subsequent foreclosure proceedings.[2] All of plaintiff's complaints ultimately were determined to be without merit by the various agencies and boards to whom they were addressed, and plaintiff subsequently requested and was granted a hearing before an Administrative Law Judge (ALJ). On November 29, 2004, the ALJ granted the USDA summary judgment because, *inter alia*, plaintiff had failed to establish *prima facie* cases of discrimination based on marital status or race. Plaintiff subsequently appealed this ruling to the USDA's Assistant Secretary for Civil Rights, who upheld the ALJ's ruling as the USDA's final determination on April 1, 2005.[3]

Thereafter, plaintiff appealed the USDA's final determination to the Court of Federal Claims, per the Omnibus Consolidated Appropriations Act for Fiscal Year 1999, Act of Oct. 21, 1998, Pub. L. No. 105-277, 112 Stat. 2681-30, § 741(d) (codified at 7 U.S.C. § 2279, notes) (hereinafter "Section 741," *infra* p. 7). However, the Court of Federal Claims dismissed the complaint on November 8, 2005, for lack of jurisdiction. Plaintiff then lodged a complaint with this Court on January 24, 2006, and after being denied the ability to proceed *in forma pauperis*, paid the $350 filing fee. The Court deemed her complaint filed as of June 6, 2006. The government now moves to dismiss on the grounds that plaintiff's action is time-barred.

---

[2] Although plaintiff's complaint contains none of this information, plaintiff subsequently filed a more definite statement of her complaint, which courts treat as amended pleadings. *See*, *e.g.,* Hartfield v. East Grand Rapids Public Schools, 960 F.Supp. 1259, 1262 (W.D. Mich. 1997).

[3] For more factual and procedural background, see the USDA's Final Determination: *In re* Alice L. Sanders, USDA Docket No. 237, HUDALJ No. 04-01-NA (April 2005).

## II. DISCUSSION

When considering a motion to dismiss, the court must construe all of the allegations in the complaint "in the light most favorable to the plaintiff." Rossborough Mfg. v. Trimble, 301 F.3d 482, 489 (6th Cir. 2002) (quoting Bower v. Fed. Exp. Corp., 96 F.3d 200, 203 (6th Cir. 1996)). For a motion to dismiss to be properly granted, "it must appear beyond doubt that the plaintiff would not be able to recover under any set of facts that could be presented consistent with the allegations of the complaint." Id. The purpose of the Fed. R. Civ. P. 12(b)(6) motion to dismiss is "to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993).

### A. Equal Credit Opportunity Act ("ECOA" or "The Act")

The ECOA provides that, *inter alia*, "It shall be unlawful for any creditor to discriminate against any applicant . . . on the basis of race, color, . . . or marital status." 15 U.S.C. § 1691(a). The ECOA specifies that any "person who regularly extends, renews, or continues credit" is a "creditor" for the purposes of the Act, and it defines a "person" as "a natural person, a corporation, government or governmental subdivision or agency. . ." 15 U.S.C. § 1691a(e)-(f). Furthermore, the Act specifically creates a private right of action against creditors who run afoul of its provisions - making such creditors liable for actual damages - and federal courts subsequently have held that Congress intended to waive immunity for the United States under the Act. 15 U.S.C. § 1691e (1974); Ordille v. U.S., 216 Fed.Appx. 160, 164 (3d Cir. Jan. 24, 2007); Moore v. USDA, 55 F.3d 991, 994 (5th Cir. 1995). To establish a *prima facie* case of discrimination under the ECOA, "a plaintiff must demonstrate that: (1) he is a member of a

4

protected class; (2) he applied for and was qualified for a loan; (3) the loan application was rejected despite his or her qualifications; and (4) the lender continued to approve loans for applicants with qualifications similar to those of the plaintiff." Hood v. Midwest Sav. Bank, 95 Fed.Appx. 768, 778 (6th Cir. 2004)(citing Michigan Prot. and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 346 (6th Cir. 1994)).

The ECOA imposes a two-year statute of limitations in which a complainant may bring an action against a creditor for allegedly discriminatory practices. 15 U.S.C. § 1691e(f). There are, however, two exceptions to this two-year statute of limitations (and another in the form of Section 741, discussed below): Whenever an administrative agency "commences an enforcement proceeding," or whenever the Attorney General "commences a civil action," either of which must occur "within two years from the date of the occurrence of the violation," a plaintiff will have an additional year from the commencement of such proceeding or action to file a civil claim. 15 U.S.C. § 1691e(f)(1)-(2). Neither of these exceptions applies to plaintiff in the instant action, however. Because plaintiff's complaint was deemed "filed" by this Court on June 6, 2006, any discriminatory acts alleged to have occurred prior to June 6, 2004, are outside of the statutory period and therefore are time-barred (excepting any tolling per Section 741; see *infra*, discussion on Section 741, p. 7). However, defendant fails to observe that plaintiff alleges discrimination that occurred in 2005, 2006, and 2007, all of which claims fall within the statutory period and would not be time-barred. Therefore, at the least, plaintiff should be allowed to proceed on these claims of discrimination that occurred after June 6, 2004.

Plaintiff also alleges "ongoing" and "continuing" discrimination against her. Such allegations beg the inquiry into whether Mrs. Sanders has made a claim of a "pattern and

5

practice" of discriminatory behavior, or a claim of a "continuing violation" which would make possible her recovery for acts which predate the limitations period. Federal case law is unclear as to the applicability of such claims to ECOA, and the Sixth Circuit "has observed that courts have been reluctant to apply the continuing violation doctrine outside of the context of Title VII." Claybrooks v. PRIMUS Automotive Financial Services, Inc., 363 F.Supp.2d 969, 981 (M.D. Tenn. 2005) (citing LRL Props. v. Portage Metro Housing Auth., 55 F.3d 1097, 1105 n. 3 (6th Cir. 1995)).[4] At least one court, though, has held that pattern-and-practice claims may be brought under the ECOA. *See* Garcia v. Johanns, 444 F.3d 625, 632 (D.C. Cir. 2006). However, that court held that in order to establish a pattern-and-practice claim, a plaintiff must show that the discrimination was the creditor's "standard operating procedure - the regular rather than the unusual practice." Id. As a result of this requirement, pattern-and-practice claims are most commonly - though not exclusively - associated with class actions, because some acts of discrimination are cognizable as such only when compared with similar treatment of others. *See, e.g.,* Davis v. General Motors Acceptance Corp., 406 F.Supp.2d 698 (N.D. Miss. 2005). In this case, plaintiff has alleged only that she has been the victim of repeated acts of discrimination, but not that such discriminatory acts are the USDA's standard operating procedure.

Moreover, even if the continuing violation doctrine is properly applied in the context of an ECOA claim, the purpose of the doctrine is to toll the statute of limitations until a "reasonable person" would have been aware of a cause of action. Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1222 (11th Cir. 2001). However, if an event or series of events "should have alerted

---

[4] *But see* Nat'l Parks Conservation Ass'n, Inc. v. TVA, 480 F.3d 410, 416-17 (6th Cir. 2007) (finding no "principled reason" to limit the applicability of the continuing violation exception to ... employment-related civil rights claims).

a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine" to evade the statute of limitations requirements. Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1415 n.6 (10th Cir. 1993). In this case, plaintiff's filings make it clear that she considered all of the alleged incidents to be discriminatory at the time they occurred, and therefore equitable tolling of the statute of limitations is not justified. Plaintiff was aware of the allegedly discriminatory nature of defendants' conduct at the time it is alleged to have happened, and the continuing violation doctrine thus is inapplicable to her claims.

## B. Section 741

Both parties reference Section 741 in their memoranda concerning this motion. Section 741 is an additional means of tolling the statute of limitations which provides, *inter alia*, that a complainant may seek an administrative determination on the merits of a civil claim against the USDA, and after the final administrative determination is made, such complainant may then appeal the final determination to a Federal court of competent jurisdiction within 180 days. 7 U.S.C. § 2279, notes, § 741(b)-(c). Section 741 further states that the U.S. Court of Federal Claims and the U.S. District Court shall have exclusive original jurisdiction over judicial review of agency determinations. Id. at § 741(d).

Assuming without deciding that plaintiff's complaint before the USDA was an "eligible complaint" for review, id. at § 741(a), (e), and that plaintiff filed for USDA review within the parameters established by Section 741, plaintiff's opportunity for judicial review nevertheless had expired by the date of her filing with this court. Plaintiff received her final determination from the USDA on April 1, 2005, and 180 days later would have been approximately September

7

28, 2005. However, plaintiff did not attempt to file a complaint with this Court until January 24, 2006, and after unsuccessfully pursuing *in forma pauperis* filing status, her complaint was not deemed filed until June 6, 2006. Because more than 180 days had passed since plaintiff received her final determination from the USDA, Section 741 does not resuscitate the claims determined therein for purposes of review in this court.

### III. RECOMMENDATION

For the reasons stated above, the undersigned RECOMMENDS that defendant's motion to dismiss be GRANTED in part and DENIED in part, such that plaintiff's claims of discrimination occurring prior to June 4, 2004 are DISMISSED, while claims of discrimination occurring subsequent to that date are allowed to proceed.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have ten (10) days from receipt of any objections filed regarding this Report within which to file a response to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation may constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140, reh'g denied, 474 U.S. 1111 (1986).

ENTERED this the 14th day of August, 2007.

s/ John S. Bryant  
John S. Bryant  
U.S. Magistrate Judge