UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ALICE L. SANDERS,            )
                             )
     Plaintiff,              )
                             )
          v.                 )   NO. 3:06-0587
                             )
USDA RURAL HOUSING, et al.,  )   Judge Campbell/Bryant
                             )
     Defendants.             )

**TO: The Honorable Todd J. Campbell**

### REPORT AND RECOMMENDATION

Pending before the Court is the defendant's motion for summary judgment. (Docket Entry No. 74). Plaintiff has responded in opposition. (Docket Entry Nos. 80, 81, 83, 84 and 93).

Defendant's motion has been referred to the undersigned Magistrate Judge for a report and recommendation. (Docket Entry No. 97).

For the reasons stated below, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED** with prejudice.

### Statement of the Case

Plaintiff Alice L. Sanders, proceeding pro se, has filed this action against the United States Department of Agriculture ("USDA"), through its agency, the Farmers Home Administration ("FmHA"),[1] alleging racial discrimination in the administration of

---

[1] It appears that the former Farmers Home Administration is now called the Rural Housing Service ("RHS"). For the sake of clarity and consistency, the abbreviation FmHA will be used

plaintiff's home loan, in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691. Specifically, plaintiff alleges that the defendant FmHA wrongfully denied her various forms of payment assistance for which she was eligible, and thereafter wrongfully commenced procedures to foreclose on her home because she is an African American.

Defendant denies all allegations of discrimination and insists that its actions complied with applicable law and the provisions of plaintiff's loan documents.

### Summary of the Facts

Although the Court has previously dismissed all claims accruing before June 4, 2004, as time-barred (Docket Entry No. 50), a brief history of plaintiff's loan from the outset is necessary for perspective.

Plaintiff was approved by FmHA for a home loan on property located at 302 Wilson Street, Greenbrier, Tennessee, in April 1986. Plaintiff and her husband signed a promissory note in principal amount of $42,500.00 to be repaid, with interest, in monthly payments of $355.00, commencing on October 3, 1986. The term of this loan was 33 years. (Docket Entry No. 75-2, p. 2). On September 4, 1986, plaintiff's monthly payment was reduced to $224.00 per month. On June 5, 1987, the FmHA provided plaintiff with a new Interest Credit Agreement, which further reduced

---

throughout this report and recommendation.

plaintiff's monthly payment to $128.00, effective July 3, 1987, for a period of twelve months. (Docket Entry No. 75-2, p. 8). After plaintiff complained that the effective date of this reduction in payment amount should have been March 1987 rather than July 1987, the FmHA agreed to make this change but informed plaintiff that she would be required to sign a new Interest Credit Agreement. (Docket Entry No. 75-2, p. 11).

On June 29, 1987, FmHA notified plaintiff that her house payment account was $542 past due and instructed her to contact the FmHA office to determine if either (1) interest credit assistance, temporarily reducing her monthly payment, or (2) a moratorium temporarily deferring her monthly payments, was a viable option. (Docket Entry No. 75-2, p. 9).

On October 13, 1987, plaintiff wrote Johnny V. Crow, State Director of FmHA, informing him that she had filed a complaint of racial discrimination against the FmHA with the Tennessee Human Rights Commission, and further stating in pertinent part:

> I will not agree to their [Mr. Erby Voorhies and Mr. Dewight Stamps, local FmHA officials] terms. I am asking for my house to be paid for so I will never have to deal with these people ever again. I am asking for some monitary (sic) damage award for all the pain and suffering they have taken me through. I am asking for Mr. Voorhies and Mr. Stamps to be relieved of their positions that they are holding. They are unfit and unqualified to hold such positions without shoing (sic) prejudice to specific racial groups.

3

> I am refusing to pay my house payments, and that
> some mutual consideration is given to my wants, so
> far it has been what they want, and what Human
> Rights could get them to agree to.

(Docket Entry No. 75-2, p. 13). Plaintiff's charge of racial discrimination against the FmHA before the Tennessee Human Rights Commission was concluded with a "no charge" determination on December 4, 1987. (Docket Entry No. 75-2, p. 14).

When the FmHA notified plaintiff in April 1988 that her home loan was $1,307.00 past due and that she needed to make her payment in order to keep her account in good standing and avoid additional interest charges, she responded as follows:

> I have stopped payments on our loan because of the
> problems we have had, and the negative, and racial
> manner that our loan has been received.

(Docket Entry No. 75-3, p. 6).

After September 6, 1987, plaintiff made no further payments on her home loan.

Following numerous written notices to plaintiff, which included offers of interest credit assistance and a temporary moratorium on payments (e.g., Docket Entry No. 75-3 generally), the FmHA mailed plaintiff on November 24, 1989, a notice of default and acceleration of her debt that further stated that the FmHA intended to proceed to foreclosure unless plaintiff acted promptly to cure the default.[2] (Docket Entry No. 75-3, pp. 14-16). Plaintiff filed

---

[2] 7 CFR § 3550.202 provides that "[a]n account is past due if the scheduled payment is not received by the due date, or as

4

a discrimination complaint against the FmHA on the basis of race, color and marital status, which was investigated by the Office of Advocacy and Enterprise. (Docket Entry No. 75-3, pp. 20-24). In an apparent response to plaintiff's lodging this discrimination charge, the FmHA on November 29, 1989, notified plaintiff that "the acceleration and foreclosure of your FmHA Rural Housing Account is being suspended pending a hearing by the U.S. Justice Department scheduled for January 1990." (Docket Entry No. 75-3, p. 19). Following an extensive investigation by the Office of Advocacy and Enterprise, the agency concluded that none of plaintiff's claims of discrimination were substantiated by the facts. (Docket Entry No. 75-3, pp. 20-24).

On March 21, 1994, the Springfield, Tennessee, office of FmHA notified plaintiff that the State Civil Rights Coordinator had advised that FmHA could resume routine servicing of plaintiff's home loan account. (Docket Entry No. 75-3, p. 25). During the months of April and May 1994, the local FmHA office mailed at least five letters to plaintiff notifying her of her unpaid loan balance, offering her the possibility of (1) interest credit assistance or

---

authorized by State law." This regulation further contains the following liquidation provision pertinent here:

> (b) <u>Liquidation</u> (1) <u>For borrowers with monthly payments</u>. The account may be accelerated without further servicing when at least 3 scheduled payments are past due or an amount equal to at least 2 scheduled payments is past due for at least 3 consecutive months. In such cases RHS may pursue voluntary liquidation and foreclosure.

5

(2) a payment moratorium, and urging her to do something to address her unpaid balance in order to avoid foreclosure. (Docket Entry No. 75-3, pp. 26-30). When these letter notices failed to produce any response from plaintiff, the FmHA on June 9, 1994, sent plaintiff a notice of default and acceleration of her debt that stated that the FmHA intended to proceed to foreclosure unless plaintiff acted promptly to cure the default. (Docket Entry No. 75-3, pp. 31-33). On July 5, 1994, plaintiff filed a discrimination complaint with the Department of Housing and Urban Development ("HUD") and on August 10, 1994, plaintiff filed a complaint of discrimination based upon race, color and national origin against the FmHA with the USDA. (Docket Entry No. 75-3, pp. 34-35). On November 3, 1994, the FmHA suspended routine servicing of plaintiff's loan account pending inquiry into plaintiff's discrimination charge by the USDA Office of Civil Rights Enforcement. (Id.)

The record indicates that since plaintiff's home loan was approved in 1986 she has filed at least eight different complaints before various state and federal agencies alleging discrimination by the FmHA or their employees regarding her loan. The filing dates of these complaints, with the agencies before which they were filed listed parenthetically, follow: August 10, 1987 (USDA); August 11, 1987 (Tennessee Human Rights Commission); August 11, 1987 (USDA); October 13, 1987 (USDA); June 15, 1999 (USDA); July 20, 1990 (HUD);

6

July 5, 1994 (HUD); and August 10, 1994 (USDA). (Docket Entry Nos. 75-3, pp. 40-44 and 75-4, pp. 2-9). Following investigations, and in some cases hearings and appeals, all of the foregoing complaints were found to be without merit. (Id.)

On April 1, 2005, the Assistant Secretary for Civil Rights for the USDA issued a "Final Determination" on plaintiff's complaints dated August 11, 1987 and October 13, 1987. (Docket Entry No. 75-4, pp. 10-16). This determination accepted as final the finding of an administrative law judge that plaintiff had failed to establish the required elements of her claim that the FmHA had violated the Equal Credit Opportunity Act. (Id.) On November 8, 2005, the United States Court of Federal Claims dismissed for lack of jurisdiction plaintiff's discrimination claims against the FmHA arising out of the foreclosure of plaintiff's home. (Docket Entry No. 75-4, p. 17).

It appears that following dismissal of the last of plaintiff's complaints of unlawful discrimination referenced above, the FmHA resumed its efforts to foreclose on plaintiff's home.

Plaintiff filed her complaint in this case on June 6, 2006.

## **Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show

7

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In order to succeed on a summary judgment motion, the movant must prove the absence of a genuine issue of material fact regarding an essential element of the opposing party's action. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In order for a dispute of material fact to be genuine, the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). More than a mere scintilla of evidence is required to support a nonmovant's position in order to defeat a motion for summary judgment. Id. at 252.

In response to a motion for summary judgment, "the non-moving party bears the responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e)." Davidson & Jones Dev. Co. v. Elmore Dev. Co., Inc., 921 F.2d 1343, 1349 (6th Cir. 1991). The nonmoving party may not rest on any conclusory allegations contained in the complaint; it must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. Fed.R.Civ.P. 56(e)(2); Celotex, 477 U.S. at 324.

The court must view all the evidence in the light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. Bender v. Southland Corp., 749 F.2d 1205, 1210-11 (6th Cir. 1984).

8

## Analysis

Plaintiff in this action asserts violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, by defendant FmHA relating to plaintiff's home loan. The ECOA provides in pertinent part as follows:

> **(a) Activities constituting discrimination**.
> It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction —
> (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract);
>
>       \*   \*   \*   \*

15 U.S.C. § 1691(a)(1).

As mentioned previously, the Court has ruled that plaintiff's claims accruing before June 4, 2004, are barred by the two-year statute of limitations. 15 U.S.C. § 1691e(f). To the best of the undersigned's ability to discern, it appears that plaintiff's surviving timely claims are that since June 4, 2004, (1) she has been wrongfully denied various forms of payment assistance to which she is entitled, and (2) that the FmHA has steadfastly and mercilessly proceeded toward a foreclosure of her home and refused her a reasonable opportunity to work out problems, because she is an African American.

To prove a *prima facie* case of racial discrimination under the ECOA, a plaintiff must prove that:

(1) she is a member of a protected class;

(2) she applied for and was qualified for assistance;

9

(3) her application was denied despite her
qualifications; and

(4) other, similarly qualified applicants not belonging
to her protected class were given more favorable
treatment.

Hood v. Midwest Savings Bank, 95 Fed. Appx. 768, 778 (6th Cir. 2004) (unpublished); Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 346 (6th Cir. 1994) (Fair Housing Act); Ward v. Union Planters Nat'l Bank, 113 F.3d 1236 (6th Cir. 1997)(Fair Housing Act) (unpublished).

A *prima facie* case requires plaintiff to present evidence on each element of her case that, if not contradicted, would be sufficient to prove her case. Here, defendant concedes the first element of plaintiff's case: plaintiff, an African American, is a member of a protected class. Beyond that, there is no evidence that plaintiff actually applied for the assistance she now apparently seeks. The documentary record before the Court includes many letters mailed by FmHA to plaintiff over the 21-year term of this loan, requesting that plaintiff come to the FmHA office to discuss her eligibility for interest credit assistance and a payment moratorium. It appears that as recently as October 2005 Toni L. Carter, Branch Chief in the St. Louis Centralized Servicing Center of the USDA, mailed plaintiff an application for payment assistance and moratorium, and requested that she complete and return this application immediately for consideration. (Carter Declaration, Docket Entry No. 75-6; Docket Entry No. 75-4, pp. 21-

10

26; Docket Entry No. 26, p. 3). Plaintiff does not claim that she ever completed and returned this application, and nothing in this record suggests that she did. It is very difficult for plaintiff to establish that she applied for assistance, that she was qualified to receive it, and that her application was rejected when the undisputed proof suggests that plaintiff never completed and submitted an application for the assistance that is the basis of her claim.

Finally, plaintiff fails to offer any evidence that other similarly qualified borrowers, not members of her protected class, have been given more favorable treatment. It is difficult to imagine that there are many other borrowers, in either protected or unprotected classes, who are similarly over 18 years in arrears on their house payments and still living in their homes.

If plaintiff were able to meet her burden of establishing a *prima facie* case of racial discrimination, the burden would then shift to the defendant FmHA to articulate a legitimate, nondiscriminatory reason for its actions. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993)(applying the burden-shifting doctrine in an employment discrimination case). Here, defendant relies upon the undisputed fact that plaintiff has made no house payment since September 6, 1987, and, as of September 9, 2005, her

11

unpaid loan account, with accrued interest, amounted to $116,498.87. (Docket Entry No. 75-4, pp. 18-19).[3]

For the foregoing reasons, the undersigned Magistrate Judge finds that plaintiff has failed to establish the elements of a *prima facie* case of racial discrimination under the Equal Credit Opportunity Act. In addition, the undersigned finds that, if a *prima facie* case had been established, plaintiff's failure to make monthly mortgage payments over 18 years and her failure to apply for payment assistance are legitimate, nondiscriminatory reasons for the FmHA to seek foreclosure of plaintiff's loan. Therefore,

---

[3] It appears from several of plaintiff's responses to defendant's statement of undisputed facts (Docket Entry No. 83) that plaintiff believes that monthly house payments that accrued during the months and years that the FmHA's routine loan servicing and attempts to foreclose on plaintiff's home were "suspended" or "in suspension" pending resolution of plaintiff's multiple discrimination claims somehow were discharged or waived. For example, in response to several of the statements listing the total loan indebtedness as of a certain date, plaintiff responded: "Disputed: The account was in suspension," or words to that effect. Plaintiff has offered no legal or contractual basis for such discharge or waiver, and none appears in the record. In fact, the final decision letter rejecting one of plaintiff's discrimination claims against the USDA stated as follows:

> As a result of the various civil rights complaints you have filed against RHS since 1987, the routine servicing of your account had to be suspended until after the complaints were resolved. However, the suspension of the servicing of your account did not relieve you of your responsibility to make monthly payments on your mortgage.

(Docket Entry No. 75-3, p. 34). The undersigned Magistrate Judge finds no legal or contractual basis for a claim that plaintiff's mortgage payments were somehow waived or discharged during the pendency of her discrimination claims.

12

the undersigned finds that there exists no genuine issue of material fact for trial and that defendant's motion for summary judgment should be granted.

### RECOMMENDATION

For the reasons stated above, the undersigned Magistrate Judge **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED** and that the complaint be **DISMISSED** with prejudice.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from service of this Report and Recommendation in which to file any written objections to this Recommendation, with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).

**ENTERED** this 16th day of April 2008.

s/ John S. Bryant
JOHN S. BRYANT
United States Magistrate Judge